UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **JANICE MARIE JONES,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **Civil Action No.** |
| **CAROLYN W. COLVIN** ) | **13-CV-905-MHH-5** |
| **Acting Commissioner of the** ) | |
| **Social Security Administration,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Pursuant to 42 U.S.C. § 405(g),[1] claimant Janice Marie Jones asks this Court to review a final adverse decision of the Commissioner of Social Security. The Commissioner affirmed the decision of the Administrative Law Judge ("ALJ") who denied Ms. Jones's claim for a period of disability and disability insurance benefits. (R. 1-3). As discussed below, the Court finds that substantial evidence

---

[1] 42 U.S.C. § 405(g) provides, in pertinent part:

Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia.

supports the ALJ's decision. Consequently, the Court affirms the Commissioner's ruling.

**STANDARD OF REVIEW**:

The scope of review in this matter is limited. "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and [his] 'legal conclusions with close scrutiny.'" *Riggs v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's findings. "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In making this evaluation, the Court may not "reweigh the evidence or decide the facts anew," and the Court must "defer to the ALJ's decision if it is supported by substantial evidence even if the evidence may preponderate against it." *Gaskin v. Comm'r of Soc. Sec.*, 533 Fed. Appx. 929 (11th Cir. 2013).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards. If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis,

then the Court must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## PROCEDURAL AND FACTUAL BACKGROUND:

On September 7, 2010, Ms. Jones applied for a period of disability and disability insurance benefits by filing an application for disability insurance benefits under Title II of the Social Security Act. (R. 22). The Social Security Administration denied Ms. Jones's application on December 6, 2010. (R. 61). At Ms. Jones's request, on October 14, 2011, an Administrative Law Judge conducted a hearing concerning Ms. Jones's application. (R. 34-59). Ms. Jones and an impartial vocational expert testified at the hearing. (R. 34). At the time of his hearing, Ms. Jones was 49 years old. (R. 40).[2] Ms. Jones has a high school education. (Doc. 11, p. 2; R. 137). Her past relevant work experience is as a court clerk. (Doc. 11, p. 2; R. 137, 158).

On November 21, 2011, the ALJ denied Ms. Jones's request for disability benefits, concluding that Ms. Jones did not have an impairment or a combination of impairments listed in, or medically equal to one listed in, the Regulations. (Doc. 11, p. 2; R. 26). In his fifteen page decision, the ALJ described the "five-step sequential evaluation process for determining whether an individual is disabled"

---

[2] At 49 years of age, Ms. Jones is considered a "younger person" under the Regulations. *See* 20 C.F.R. § 404.1563(c) ("If you are a younger person (under age 50), we generally do not consider that your age will seriously affect your ability to adjust to other work. . . .").

3

and explained that "[i]f it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step." (R. 19-33).

The ALJ found that Ms. Jones had not "engaged in substantial gainful activity since June 1, 2010, the alleged onset date."[3] (R. 24). In addition, the ALJ concluded that Ms. Jones had "the following severe impairments: low back pain and status post left knee lateral meniscectomy and chondroplasty of the medial femoral condyle."[4] (Doc. 9, p. 4; R. 24). The ALJ stated, "these impairments are . . . 'severe' within the meaning of the Regulations because they cause more than a minimal limitation on [Ms. Jones's] ability to perform basic work activities." (R. 24).[5] Still, the ALJ opined that:

> [Ms. Jones's low back pain] does not satisfy the criteria of section 1.04. Specifically, the record is devoid of evidence of nerve root compression, spinal arachnoiditis, or lumbar stenosis with accompanying ineffective ambulation . . . [Ms. Jones's residual left knee pain] does

---

[3] The Court reviewed not only the ALJ's decision, but also Ms. Jones's medical records. The Court finds that the ALJ's description of Ms. Jones's medical evaluations is accurate. In a number of instances in this opinion, the Court has provided citations not only to the ALJ's decision but also to the underlying records to illustrate that there is no discrepancy between the two.

[4] The ALJ concluded that Ms. Jones had severe medical impairments pursuant to 20 C.F.R. §404.1520(c); however, Ms. Jones's impairments do not meet the requirements listed in, or are medically equivalent to, the listed impairments in 20 C.F.R. §404.1520(d), 20 C.F.R. §404.1525, and 20 C.F.R. §404.1526, because her impairments "cause no more than a minimal limitation on her ability to perform basic work activities." (R. 24).

[5] The ALJ found that Ms. Jones's mental impairments of depression and adjustment disorder were non-severe. (R. 25).

> not satisfy the requirements of section 1.02A. Specifically, the record does not contain evidence of a major dysfunction of a major peripheral weight-bearing joint, resulting in the inability to ambulate effectively.

(R. 26). Based on these factual findings, the ALJ concluded that Ms. Jones had the "residual functional capacity to perform light work . . . except that [she] is only capable of performing postural activities on occasion." (R. 26).

In reaching his conclusion, the ALJ considered a report from Dr. Will Crouch, a physician who examined Ms. Jones at the state's request as a consultative examiner. (Doc. 11, p. 6; R. 27). Dr. Crouch opined that Ms. Jones did not require an assistive device and was able to heel and toe walk. (Doc. 11, p. 6; R. 277). Dr. Couch noted that Ms. Jones "[could] get[] on and off the exam table without assistance." (Doc. 11, p. 6; R. 277).

The ALJ took into account the treatment notes of Dr. Larry Gazzini, a physician who Ms. Jones saw for treatment of fatigue, hypertension, and diabetes mellitus, type II. (Doc. 11, p. 5-6; R. 28, 203-274). Dr. Gazzini noted that Ms. Jones's hypertension and diabetes mellitus were "well controlled." (Doc. 11, p. 5-6; R. 28, 305-308). In February 2011, Dr. Gazzini observed that Ms. Jones "was exercising regularly, using a treadmill at home and going to Curves, an exercise center." (Doc. 11, p. 5-6; R. 28, 302-308). The ALJ determined that "[Ms. Jones]'s complaints of pain were inconsistent with her testimony regarding her activities of daily living." (R. 28).

The ALJ also took into account the results of a psychological evaluation that Dr. Kristine Lokken Edmondson performed. Dr. Edmondson found that Ms. Jones has "major depressive disorder and assigned limitations, as a consequence that would be disabling." (Doc. 11, p. 8; R. 25, 313). The ALJ gave little weight to Dr. Edmonson's findings because there were "no treatment notes from the psychologist to support [the] opinion" and because Dr. Mary Arnold, an examining psychologist, assigned Ms. Jones a global assessment of functioning (GAF) of 65.[6] (Doc. 11, p. 8; R. 25, 286). According to the ALJ, the DSM-IV shows a GAF score of 65, which "is indicative of only mild difficulties in social, occupational or school functioning." (R. 25). The ALJ determined "there is no other evidence in the record, which reflects the existence of a severe mental impairment." (R. 25).[7]

The ALJ reviewed records from Dr. Thomas Powell, the physician who performed surgery on Ms. Jones's left knee. (Doc. 11, p. 7; R. 28, 372). In those records, Dr. Powell wrote that Ms. Jones "was doing fairly well" and "'getting along pretty well' since her surgery." (Doc. 11, p. 7; R. 28, 372-378). The ALJ also considered the opinion that a vocational expert offered at Ms. Jones's October 14, 2011 SSA review hearing. The expert testified that a person with Ms. Jones's

---

[6] The ALJ noted that Ms. Jones had a GAF score of 65 in her last psychological examination, however Dr. Arnold assigned Ms. Jones a GAF score of 57 at her last evaluation. (R. 286). A lower GAF score is indicative of a lower level of functional capacity.

[7] *See* Diagnostic and Statistical Manual of Mental Disorders (Fourth Addition "DSM-IV"), § 309.81 (Am. Psychiatric Ass'n 4th ed.) (1994).

residual functional capacity would be capable of performing work at the less than light level such as Ms. Jones's past relevant work as a court clerk. (R. 28, 58).

The ALJ acknowledged that Ms. Jones's treating physician, Dr. Mary Altz Smith, "noted . . . that the claimant was unable to perform most postural activities, could only lift and/or carry five pounds or less, sit for two hours, and stand for one hour" and that Ms. Jones has "suffered from severe fatigue, and pain severe enough to distract from work." (Doc. 11, pp. 4-6; R. 27). The ALJ afforded little weight to Dr. Smith's opinion because "despite the minimal evidence of a back injury, [Dr. Smith] has been administering lumbar injections for . . . lumbar spondylosis. However, there are no clinical notes from Dr. Smith to support this diagnosis." (R. 27-28). In addition, the ALJ cited Dr. Smith's lack of a diagnosis of fatigue, as well as Dr. Smith's omission of a determining factor of fatigue as reason to afford Dr. Smith's opinion little weight. (Doc. 11, pp. 8-9; R. 28). The ALJ determined that Dr. Smith's opinions lacked medical support, and clear contradictory evidence existed in regard to Ms. Jones's back pain in the record. (R. 28).

Ultimately, the ALJ found that Ms. Jones "is capable of performing work at the less than light level . . . [Ms. Jones] is able to perform her past relevant work as a court clerk." (R. 28). The ALJ reasoned that Ms. Jones had:

> …worked as a court clerk from 1980-2010. [Ms. Jones]'s work as a court clerk was substantial gainful activity,

7

> performed for over a year, within the past fifteen years. Thus, [Ms. Jones's] past relevant work meets the criteria for past relevant work.
>
> In comparing [Ms. Jones]'s residual functional capacity with the physical and mental demands of this work, [the undersigned] find[s] that [Ms. Jones] is able to perform it as actually and generally performed. [Ms. Jones]'s past relevant work as a court clerk was semi-skilled work performed at the sedentary level. The vocational expert also opined [Ms. Jones] would be able to perform her past work with the assigned residual functional capacity. As [the undersigned] found that [Ms. Jones] is capable of performing work at the less than light level, the demands of [Ms. Jones]'s past relevant work do not exceed her residual functional capacity. Accordingly, I find that the claimant is able to perform her past relevant work as a court clerk.

(R. 28). Consequently, the ALJ decided that Ms. Jones "is not disabled under sections 216(i) and 223(d) of the Social Security Act." (R. 29). The ALJ found that Ms. Jones retained the residual functional capacity to perform work-related activities at the less than light level of physical exertion and that there would be sedentary jobs that would accommodate Ms. Jones's limitations, including her past relevant work. (R. 28).

On March 12, 2013, this became the final decision of the Commissioner of the Social Security Administration when the Appeals Council refused to review the ALJ's decision. (R. 1). Having exhausted all administrative remedies, Ms. Jones filed this action for judicial review pursuant to §205(g) of the Social Security Act. *See* 42 U.S.C. § 405(g).

**ANALYSIS**:

To be eligible for disability insurance benefits, a claimant must be disabled. *Gaskin*, 533 Fed. Appx. at 930. "A claimant is disabled if he is unable to engage in substantial gainful activity by reason of a medically-determinable impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)).

A claimant must prove that he is disabled. *Id.* (citing *Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir. 2003)). To determine whether a claimant is disabled, the Social Security Administration applies a five-step sequential analysis. *Gaskin*, 533 Fed. Appx. at 930.

> This process includes a determination of whether the claimant (1) is unable to engage in substantial gainful activity; (2) has a severe and medically-determinable physical or mental impairment; (3) has such an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform his past relevant work, in the light of his residual functional capacity; and (5) can make an adjustment to other work, in the light of his residual functional capacity, age, education, and work experience.

*Id.* (citation omitted). "The claimant's residual functional capacity is an assessment, based upon all relevant evidence, of the claimant's ability to do work despite his impairments." *Id.* at 930 (citing *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997); 20 C.F.R. § 404.1545(a)(1)).

Here, in assessing whether Ms. Jones is disabled, the ALJ found that Ms. Jones's low back pain and status post left knee lateral meniscectomy and chondroplasty of the medial femoral condyle constitute severe physical impairments that "cause [Ms. Jones] more than a minimal limitation on [Ms. Jones]'s ability to perform basic work activities." (R. 24). Nevertheless, the ALJ concluded that Mrs. Jones is not disabled because she is able to perform her past relevant work as a court clerk despite her impairments. (*See* R. 28). The ALJ based his decision on the following substantial evidence: Dr. Crouch's opinion from his consultative examination that Ms. Jones, "did not require an assistive device and was able to heel and toe walk;" Dr. Gazzini's report that Ms. Jones's hypertension and diabetes mellitus, type II are well-controlled; Dr. Powell's notes that indicated that Ms. Jones was "getting along pretty well" after her knee surgery; and the vocational expert's opinion that a person of Ms. Jones's age, education, and work experience with Ms. Jones's residual functional capacity would be capable of performing work such as Ms. Jones's past relevant work as a court clerk. (Doc. 9, p. 5; R. 26-28).

Ms. Jones argues that despite this substantial evidence, she is entitled to relief from the ALJ's decision because the ALJ did not give sufficient weight to the opinions of Dr. Smith, Ms. Jones's treating physician, and the ALJ failed to develop Ms. Jones's medical record. (Doc. 9, pp. 6-8). The Court disagrees.

The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.*; *see also Crawford*, 363 F.3d at 1159. "The ALJ must clearly articulate the reasons for giving less weight to a treating physician's opinion, and the failure to do so constitutes error. 'Moreover, the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor.'" *Gaskin*, 533 Fed. Appx. at 932 (citing *Lewis,* 125 F.3d at 1440, and quoting *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1179 (11th Cir. 2011)).

In this case, the ALJ clearly articulated his reasons for affording Dr. Smith's opinion little weight. The ALJ expressly found that evidence contained in the record contradicted Dr. Smith's opinion that Ms. Jones could lift five pounds only occasionally or less frequently, could sit for a total of only two hours in an eight hour day, and could stand for a total of only one hour in an entire eight hour day. (Doc. 9, p. 5; R. 369). The ALJ also noted that Dr. Smith's opinion was unsupported by medical evidence. (Doc. 11, p. 5-7; R. 28). For example, while Dr. Smith determined that Ms. Jones's fatigue and weakness precluded her from

11

adequate performance of daily work activities, Dr. Smith never diagnosed the cause of the fatigue and weakness. (R. 28). In addition, in 2009, despite the "minimal evidence of a back injury," Dr. Smith administered lumbar injections to Ms. Jones for lumbar spondylosis and failed to support the diagnosis with appropriate case notes. (R. 27). Medical records from 2010 and early 2011 from Dr. Gazzini are inconsistent with Dr. Smith's opinion. (*see*, *e.g.*, R.239-46). In October 2010, a state consultative examiner, Dr. Crouch, conducted diagnostic testing that indicated that Ms. Jones's physical impairments were merely "minimal degenerative changes" to the lumbar spine. (*Id.*). Substantial evidence supports the ALJ's decision to give little weight to Dr. Smith's opinion. *Crawford*, 363 F.3d at 1159-61 (finding that substantial evidence supported the ALJ's decision to discredit the opinions of the claimant's treating physicians where those physicians' opinions regarding the claimant's disability were inconsistent with the physicians' treatment notes and unsupported by the medical evidence).

Ms. Jones argues that the ALJ erred by failing to develop the record with supplemental medical evidence from a consultative exam or a state hired medical expert. (Doc. 9, pp. 8-9). The Court has located no such requirement in the regulations that Ms. Jones cites. 20 C.F.R. § 404.1519a(b)(4) provides:

> Situations that may require a consultative examination. We may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim. Some

examples of when we might purchase a consultative examination to secure needed medical evidence, such as clinical findings, laboratory tests, a diagnosis, or prognosis, include but are not limited to: . . . There is an indication of a change in your condition that is likely to affect your ability to work, but the current severity of your impairment is not established.

20 C.F.R. § 404.1519a(b)(4).  Ms. Jones's medical records do not indicate that there has been a change in her condition that is likely to affect her ability to work.

An ALJ has a duty to purchase a consultative examination only when a final determination cannot be made from the record as a whole.  *Johnson v. Barnhart*, 138 Fed. Appx. 266, 270 (11th Cir. 2005).  As the Eleventh Circuit has stated:

> In making disability determinations, the Commissioner considers whether the evidence is consistent and sufficient to make a determination. If it is not consistent, the Commissioner weighs the evidence to reach her decision. If, after weighing the evidence, the Commissioner cannot reach a determination, then she will seek additional information or recontact the physicians.

*Johnson*, 138 Fed. Appx. at 270-71; s*ee also Castle v. Colvin*, 557 Fed. Appx. 849, 854 (11th Cir. 2014) (holding that when the record is fully and fairly developed, it is not necessary for an ALJ to order a consultative examination to make an informed decision). The record contains evidence regarding one consultative report from Dr. Crouch. (R. 277). Because substantial evidence supports the ALJ's decision, the ALJ did not have to order a second consultative examination.

Having examined the available evidence thoroughly, the ALJ determined that Ms. Jones is not disabled. That finding rests on substantial evidence. The Court will not reweigh the evidence or substitute its judgment for that of the Commissioner.

**CONCLUSION**:

Consistent with the foregoing, the Court concludes that the ALJ's decision is based upon substantial evidence and is consistent with applicable legal standards. Accordingly, the decision of the Commissioner is AFFIRMED. The Court will enter an order consistent with this memorandum opinion.

**DONE** and **ORDERED** this September 5, 2014.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE